UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD AND DONNA GARDNER,** | |
| **Plaintiffs,** | **CASE NO.** |
| v. | **COMPLAINT** |
| **KNAUF GIPS KG and KNAUF PLASTERBOARD (TIANJIN) CO., LTD.** | **JURY TRIAL DEMAND** |
| **Defendants.** | |

_____

### PLAINTIFFS' COMPLAINT

Plaintiffs, Richard Gardner and Donna Gardner, owners of a home containing defective Chinese manufactured drywall, bring this complaint against the Knauf entities[1], who manufactured the defective Chinese drywall installed in their home.

### JURISDICTION, PARTIES, AND VENUE

1. Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(a)(2). The Plaintiffs and Defendants are citizens of different states and/or citizens or subjects of a foreign state and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and (c) because Plaintiffs reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District. Venue is otherwise appropriate in this district consistent with 28 U.S.C. § 1407 and the June 15, 2009 Transfer Order of the Judicial Panel on Multidistrict Litigation ("JPML"). *See In re: Chinese-Manufactured Drywall Products Liability Litigation,* 626 F. Supp. 2d 1346 (J.P.M.L. Jun. 15, 2009).

---

[1] Knauf consists of Knauf GIPS KG and Knauf Plasterboard (Tianjin) Co., Ltd. (collectively "Knauf').

**PLAINTIFFS**

3. Plaintiffs, Richard and Donna Gardner, are residents of Louisiana and together own real property located at 30 Nassau Drive, Metairie, Louisiana 70003. On March 27, 2015, Plaintiffs entered into a contract to sell their home for the sum of $2,375,000.00, which contract was cancelled on or about April 22, 2015 due to the discovery in the interim of Knauf Chinese manufactured drywall in the home pursuant to a property inspection conducted by the prospective purchaser of the home.

**DEFENDANTS**

4. Defendant Knauf GIPS KG is a German corporation doing business in the State of Louisiana, among others. Knauf GIPS KG is a leading manufacturer of building materials and systems. Knauf GIPS KG, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all times material hereto, Knauf GIPS KG supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

5. Among other things, in 1995, Knauf GIPS KG introduced its advanced production techniques and technology into China. From 1997 through 2001, Knauf GIPS KG invested in China and established three plasterboard plants which are located in Wuhu, Tianjin and Dongguan. The product quality of all Knauf GIPS KG's plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf GIPS KG's headquarters in Germany. Moreover, Knauf GIPS KG's sales and technical support teams support Knauf GIPS KG's businesses throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are the actual and/or apparent agents of Knauf GIPS KG.

6. Upon information and belief, Knauf GIPS KG, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Upon information and belief, Knauf GIPS KG and/or Knauf Tianjin has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States, including Plaintiffs' home. Knauf GIPS KG and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States, including Interior Exterior Building Supply, L.P., which sold the defective Chinese manufactured drywall to Plaintiffs' contractor which then installed the defective product in Plaintiffs' home. Knauf GIPS KG directly controlled through its global family of businesses the importation of defective Chinese drywall at all times and provided oversight over internal investigations of sales of defective Chinese drywall.

7. Defendant Knauf Tianjin is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of Knauf GIPS KG. Upon information and belief, Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Knauf GIPS KG, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Tianjin

and/or Knauf GIPS KG has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Tianjin and/or Knauf GIPS KG manufactured and sold, directly and indirectly, to certain suppliers in the United States.  Representatives of Knauf Tianjin have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into United States Courts.  Upon information and belief, defective drywall manufactured by Knauf Tianjin was sold to Interior Exterior Building Supply, L.P., which then sold the defective Chinese manufactured drywall to Plaintiffs' contractor which then installed the defective product in Plaintiffs' home.

## FACTS REGARDING PRODUCT DEFECT

8. Upon information and belief, Knauf's drywall contains gypsum.

9. In "defective drywall" (such as that designed, manufactured and exported by Knauf herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

10. Sulfides and other noxious gases, such as those emitted from Knauf's drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

11. Exposure to sulfide and other noxious gases, such as those emitted from Knauf's drywall, may cause personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

4

12. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' structure, personal property, and bodies have been exposed to Knauf's defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Knauf's defective drywall.

13. Knauf tortiously designed, manufactured and exported the defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' home.

14. Knauf negligently manufactured, designed and exported the defective drywall at issue in this litigation.

15. Knauf negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

16. As a direct and proximate result of Knauf's defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from this product, Plaintiffs have suffered, and continue to suffer economic harm.

17. As a direct and proximate result of Knauf's defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from the product, the Plaintiffs have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection and monitoring; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their home and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property; and loss of use and enjoyment of their home and property. In addition, upon discovery of the defective drywall in their home,

Plaintiffs lost the opportunity to sell their home and have continued to incur the costs of ownership and maintenance of the home of which they would have been relieved had the sale been completed.

18. As a direct and proximate result of Knauf's defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from the product, Plaintiffs have been exposed to toxic gases, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home.

## **DISCOVERY RULE**

19. The causes of action alleged herein did not accrue until Plaintiffs discovered that their home contained defective Chinese manufactured drywall.

20. As a consequence of flooding caused by Hurricane Katrina, Plaintiffs renovated the first floor of their home beginning in 2006 and ending in early 2007. Unbeknownst to Plaintiffs, during the renovations, their contractor purchased from Interior Exterior Building Supply, L.P. defective drywall manufactured by Knauf for inclusion in the reconstruction of their home.

21. On or about March 27, 2015, Plaintiffs entered into a purchase agreement to sell their home for the sum of $2,375,000.00, subject to an inspection.

22. On or about April 1, 2015, Gurtler Brothers Consultants, Inc. inspected Plaintiffs' home on behalf of the prospective purchasers and on April 6, 2015 rendered a report which concluded there was reason to believe that the home contained defective Chinese drywall. Upon further inspection, it was determined that defective drywall manufactured by the Knauf entities was present in the home and further investigation revealed that the defective drywall had been

purchased, upon information and belief, from Interior Exterior Building Supply, L.P. between August 18, 2006 and August 28, 2006.

23. As a consequence of the presence of defective Chinese drywall in the home, the prospective purchaser of the home cancelled the purchase agreement.

24. Prior to the home inspection in April 2015, Plaintiffs did not know and had no reasonable ability to discover that their home was contaminated with defective Chinese drywall manufactured by the Knauf entities. Until then, Plaintiffs had no reason to believe that defective Chinese drywall was in their home and were unable to discover the presence of the defective Chinese drywall despite the exercise of reasonable and due diligence. Accordingly, their causes of action did not accrue until they discovered that defective Chinese drywall was present in their home.

## COUNT I
## LOUISIANA PRODUCTS LIABILITY ACT,
## L.S.A. R.S. 9:2800.51 et seq.

25. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

26. At all times relevant hereto, Knauf was in the business of designing, manufacturing, selling and distributing drywall for sale to the general public.

27. The drywall, including that installed in Plaintiffs' home, was placed by Knauf in the stream of commerce.

28. Knauf knew that the subject drywall would be used without inspection for defects by consumers.

29. Knauf intended that the drywall reach the ultimate consumers, such as Plaintiffs, and it indeed reached Plaintiffs when it was installed in their home.

7

30. When installed in Plaintiffs' home, the drywall was in substantially the same condition as it was in when Knauf manufactured and sold it.

31. At all times relevant hereto, the subject drywall was used in a manner consistent with the uses intended by, or known to Knauf, and in accordance with Knauf's directions and instructions.

32. The subject drywall was not misused or altered by any third parties.

33. Knauf's drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

34. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and at the time the defective drywall left Knauf's control there existed an alternative design for the product that was capable of preventing Plaintiffs' damages and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on Knauf in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

35. The manufacturing defect was in improperly selecting, testing, inspecting, mining, marking, assembling, and using, gypsum for drywall with levels of sulfur that were too high and that emitted various sulfide gases and/or other chemicals through off-gassing.

36. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

37. Knauf's defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use.

38. The drywall is also defective and unreasonably dangerous because Knauf failed to adequately warn and instruct Plaintiffs of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

39. Plaintiffs were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs, acting as reasonably prudent people, discover that Knauf's drywall was defective, as set forth herein, or perceive its danger.

40. Knauf's defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs.

41. Knauf's defective drywall's benefit to Plaintiffs, if any, was greatly outweighed by the risk of harm and danger to them.

42. The defects in the drywall, as well as Knauf's failure to adequately warn Plaintiffs of the defects, rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiffs.

## COUNT II
## REDHIBITION

43. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

44. The drywall manufactured, distributed and/or sold by Knauf was not reasonably fit for its ordinary and intended purpose.

45. Knauf is therefore liable to Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

9

46. In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Knauf contained hidden redhibitory defects, in that, at the time of delivery, the propensity to emit or off-gas sulfur compounds and/or other potentially harmful, irritating and/or corrosive substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the defect or defects.

47. In the alternative, the defects are redhibitory in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that Plaintiffs would have bought it, but for a lesser price.

48. Knauf is conclusively presumed to know of the defects in the drywall manufactured by them.

49. Knauf is therefore liable to Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for all damages suffered, including, but not limited to, all sums necessary to fully remediate Plaintiffs' home and its appurtenances and return it to marketable condition, all losses suffered as a result of the cancellation of the intended sale of the home and diminution in the value of the home, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, demand the following relief from Knauf:

    a.    an award of all compensatory damages;

    b.    pre and post-judgment interest as allowed by law;

    c.    injunctive relief;

    d.    an award of attorneys' fees as allowed by law;

    e.    an award of taxable costs; and

    f.    any and all such further relief as this Court deems just and proper.

Dated: July 10, 2015

By: /s/ Bruce S. Kingsdorf
Bruce S. Kingsdorf, Esq. (#7403)
Zachary L. Wool (#32778)
BARRIOS KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
bkingsdorf@bkc-law.com
zwool@bkc-law.com

Michael J. Ryan
*(pro hac vice motion forthcoming)*
KRUPNICK CAMPBELL MALONE BUSER
SLAMA HANCOCK LIBERMAN
12 S.E. Seventh Street, Suite 801
Fort Lauderdale, FL 33301
Phone: (954) 763-8181
Fax: (954) 763-8292
mryan@krupnicklaw.com